

*FILED*

# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

APR 0 1 2024

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ BC ____ DEP CLK

In the Matter of the Search of

AN APPLE IPHONE (BLACK IN COLOR, UNKNOWN SERIAL
NUMBER), I-SERIES DESKTOP COMPUTER (SERIAL NUMBER:
751D-EE5B-F17A-412F-17), HP LAPTOP COMPUTER (SERIAL
NUMBER: 5CG2104865), HP LAPTOP (SERIAL NUMBER:
CND24415QF), APPLE IPAD (SERIAL NUMBER: DLXW3152HP34),
CURRENTLY LOCATED AT 721 MEDICAL CENTER DRIVE, SUITE
300, WILMINGTON, NC 28401

Case No. 7:24-mj-1069-RJ

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, attached hereto and incorporated as if fully restated herein.

located in the _____ Eastern _____ District of _____ North Carolina _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached hereto and incorporated as if fully restated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

❏ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 545 | importation of merchandise into the United States contrary to law |
| 18 U.S.C. §§ 922(a) & (g)(1) | unlawful receipt of any firearm in interstate or foreign commerce &possession of a |
| 21 U.S.C. § 841 | firearm as a convicted felon and PWID controlled substances |

The application is based on these facts:

See attached Affidavit incorporated as if fully restated herein.

❏ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**JEFFREY J WALTON** Digitally signed by JEFFREY J WALTON
Date: 2024.03.29 16:32:29 -04'00'

*Applicant's signature*

Jeffrey J. Walton, HSI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephonic communciation _____ *(specify reliable electronic means).*

Date: _____ April 1 2024 _____

_____
*Judge's signature*

City and state: Wilmington, NC

Robert B. Jones, Jr. United States Magistrate Judge

*Printed name and title*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

IN THE MATTER OF THE SEARCH OF AN
APPLE IPHONE (BLACK IN COLOR,
UNKNOWN SERIAL NUMBER), I-SERIES
DESKTOP COMPUTER (SERIAL NUMBER:
751D-EE5B-F17A-412F-17), HP LAPTOP
COMPUTER (SERIAL NUMBER:
5CG2104865), HP LAPTOP (SERIAL
NUMBER: CND24415QF), APPLE IPAD
(SERIAL NUMBER: DLXW3152HP34),
CURRENTLY LOCATED AT 721 MEDICAL
CENTER DRIVE, SUITE 300, WILMINGTON,
NC 28401

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jeffrey J. Walton, Special Agent with the Homeland Security Investigations, being first duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I have been a Special Agent with the United States Department of Homeland Security (DHS), United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) since September 2005. I am currently assigned to the HSI Myrtle Beach, South Carolina Post of Duty. As part of my daily duties, I investigate criminal violations relating to the importation and exportation of merchandise contrary to law. I have received training and have participated in the execution of numerous search warrants involving the illegal importation and exportation of merchandise. I have become familiar with a variety of means through which individuals and entities import and export merchandise in violation of U.S. federal laws and the financial transactions supporting those illegal activities.



2.     This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the above mentioned devices ("Subject Electronic Devices") seized from Joshua A. Darden on January 31, 2024, as more specifically described in Attachment A, for evidence of violations of Title 18, United States Code, Sections 545, importation of merchandise into the United States contrary to law; Title 18, United States Code, Section 922(a)(l)(A), unlawful receipt of any firearm in interstate or foreign commerce; Title 18, United States Code, Section 922(g)(l), possession of a firearm as a convicted felon; Title 21, United States Code, Section 841, possession with intent to distribute controlled substances; and Title 18, United States Code, Section 924(c), possession of a firearm in furtherance of a drug trafficking crime, (together, the "Subject Violations"). Located within the Subject Electronic Devices to be searched, I seek to seize evidence, fruits, and instrumentalities of the Subject Violations, as more specifically described in Attachment B.

3.     Currently, your affiant is investigating the attempted importation of a "firearm suppressor," or firearm silencer, from China to the United States. The term "firearm" under Title 18, United States Code, Sections 92l(a)(3) and 922(g), is defined as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; or any destructive device." Furthermore, the term "firearm silencer," under Title 18 United States Code, Section 921(a)(25), is defined, as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." For the purpose of Chapter 53

2

of Title 26, the term "firearm" is defined as "(7) any silencer (as defined in Section 921 of Title 18, United States Code)."

4.    Information contained within this affidavit is based upon information from my investigation, my personal observations, my training and experience, and information relayed to me by other law enforcement officers and agents.

5.    Because this affidavit is being submitted for the limited purpose of securing authorization for the requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the requested warrant.

## PROBABLE CAUSE

6.    On December 20, 2023, a United States Postal Service (USPS) Mail Parcel arrived at the Longo Customs Service, located at 1080 S.E. 5th Street, Suite #300, Hialeah, Florida 33010. The tracking number on the package was 92748927005795000038361889, and the package was enroute to 1709 Husted Road, Suite 6, Conway, S.C. 29526 (hereafter "the business") from China. The package was identified by the air waybill 000038361889 and described as an "automatic filter, filtering or purifying machinery parts." The package was subsequently inspected by Customs and Border Protection (CBP) upon entry into the United States. The package was found to actually contain a firearm suppressor.

7.    On December 26, 2023, HSI Myrtle Beach received the firearm suppressor for further investigation. The recipient listed on the shipping label was "TATTOO JOSH DARDEN, 1709 HUSTED ROAD, SUITE 6, CONWAY, SC 29526." A photograph of the shipping label on the parcel and photographs of the firearm suppressor are provided below:

3





DEPT
1080 SE 3TH STREET, SUITE 300
HIALEAH, FL 33010

CARRIER-LEAVE IF NO RESPONSE

TATTOO JOSH DARDEN
1709 HUSTED RD STE 8
CONWAY, SC 29526

0575

## Parcel Select Lightweight

USPS TRACKING # eVS

9274 8927 0057 9500 0038 3618 89

MYR121  AT  40  MYR
CAE
D-ST-1-A

DROP:2570 MAIN ST, , CONWAY, SC, 295269998

YT2333621272098361

ATL

4



8.      On January 5, 2024, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent Steve Worthy inspected the seized firearm suppressor. SA Worthy has received National Firearms Act (NFA) training on firearm suppressors at the Federal Law Enforcement Training Center and has also received technical bulletins from the ATF Firearms Technology Branch on illegal suppressors imported from China. SA Worthy determined, based on his training and experience, that the item possessed the characteristics of a firearm suppressor, and item was consistent with ones that law enforcement encounter that are commonly marketed as "fuel filters"

5

and "solvent traps" to avoid detection. SA Worthy also noticed the firearm suppressor did not bear an NFA manufacturer's marks of identification or serial number as required by Title 26 United States Code, Section 5842.[1]

9.      The ATF regulates the permanent importation of defense articles, including firearms and ammunition. Firearms and ammunition must be imported by a Federal Firearms Licensee (FFL)—generally an importer licensed by ATF to routinely engage in that business. The FFL must obtain an import permit from ATF before importing any firearm into the United States. To be imported lawfully, the firearm must also be generally suitable for, or readily adaptable to, sporting purposes. Surplus military firearms are generally prohibited from importation into the United States except for certain curio or relic surplus military firearms imported by licensed importers only. Provided the firearm is lawfully importable, the person seeking to import the firearm will need to utilize a licensed FFL in his or her state of residence to import the firearm, prior to bringing the firearm to the United States. The FFL must submit an ATF Form 6, Application and Permit for Importation of Firearms, Ammunition, and Defense Articles (ATF Form 5330.3A) to ATF to obtain authorization to import the firearm.

10.     Through open-source and law enforcement database searches, agents have learned that Joshua Aaron Darden, born July 29, 1986 with social security number 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, is associated with the listed tattoo business. Additionally, South Carolina driver's license number 105742039 is assigned to Darden. South Carolina Department of Motor Vehicles (DMV) records listed Darden's address as 208 Plantation Drive, Apartment B, Myrtle Beach, S.C. 29588. Agents

---

[1] 26 U.S.C. § 5842 requires that "each manufacturer and importer and anyone making a firearm identify each firearm, other than a destructive device, manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the Secretary may by regulations prescribe.

have conducted surveillance operations at 208 Plantation Drive, Apartment B, Myrtle Beach, S.C. 29588 and have not observed Darden at the address. Vehicles observed during the surveillance operations at 208 Plantation Drive were registered to other individuals with the same address as Darden. Based on these facts, agents have reason to believe Darden no longer resides at this address and he has not updated his driver's license with the DMV.

11.     On January 9, 2024, HSI Myrtle Beach received utility records from the Santee Cooper Law Enforcement/Security Division pursuant to DHS Summons number HSI-WI-2024-022805-001, requesting customer information related to the business. The records indicated that account number 9008685229 is assigned to the tattoo business under the name Joshua Darden, with a birthdate of July 29, 1986, and South Carolina driver's license number 105742039 and social security number 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.

12.     On January 10, 2024, your affiant conducted surveillance of the business. Your affiant observed Darden entering and exiting the front door of the business at different times throughout the surveillance before Darden and an unknown female subject departed the business at approximately 7:15 p.m.

13.     On January 16, 2024, your affiant interviewed a reliable confidential source (CS). In the past, the CS has participated in controlled purchases of narcotics and provided information leading to search warrants, seizures of narcotics, and arrests of narcotics dealers. During the interview, the CS stated he/she has known Darden since approximately December 2022, and he met Darden through a mutual friend. The CS stated Darden is a tattoo artist, and that Darden lives at the business. The CS stated he/she last saw Darden at the business around September or October of 2023. The CS stated Darden has sold the CS drugs at the business and the CS has also seen

Darden working on firearms in the garage of the business. The CS stated Darden has several firearms hidden throughout the business as well as illegal drugs.

14.     On December 27, 2023, HSI Myrtle Beach Task Force Officer (TFO) Jeff Drayton and Horry County Police Department (HCPD) Detective Nicholas Amberg conducted surveillance of business. At approximately 10:00 p.m., the "open" sign was still on and Det. Amberg, acting in a casual undercover capacity, knocked on the door of the business. Darden opened the door and invited Det. Amberg into the business. Upon entering the business, Det. Amberg observed closed doors inside along with a service/appointment window. Past the lobby was a room with three tattoo chairs. Det. Amberg noticed another door beyond the tattoo room but could not see inside that room. Det. Amberg did not observe any family pictures or personal items in the tattoo room and stated the room was very clean. Det. Amberg engaged in casual conversation with Darden about getting a tattoo finished. Darden mentioned to Det. Amberg that he liked guns and told Det. Amberg that he should get a tattoo of the Statue of Liberty holding an AK-47. Det. Amberg continued to engage in casual conversation with Darden and Det. Amberg observed there were clothes on the couch in the lobby of the business. Darden provided Det. Amberg business cards for two other individuals that do tattoos at the business. Det. Amberg subsequently conducted research of the individuals and observed the individuals live in Charleston, SC.

15.     The business is "Stay True Tattoo," which is clearly marked by both signage and vinyl stickers on the business entrance. No other business signage appears on the exterior of the business entrance.

16.     Your affiant is aware that Darden has been convicted of a felony charge in Tennessee for Neglect of a Child or Helpless Person in 2017 and sentenced to three years of probation; therefore, Darden has been convicted of a crime punishable by a term of imprisonment

8

exceeding one year. Thus, Darden is a felon for purposes of 18 U.S.C. § 922(g)(1) and is prohibited from possessing firearms and/or ammunition.

17.     On January 30, 2024, HSI SA Jeffrey Walton was granted an anticipatory search warrant by United States Magistrate Judge Kaymani D. West. The search warrant was for Darden's business and suspected residence, Stay True Tattoo, located at 1709 Husted Road, Suite 6, Conway, SC 29526 (hereafter "the business").

18.     On January 31, 2024, agents from HSI, ATF, United States Postal Inspection Service (USPIS), and Horry County Police Department executed a controlled delivery of the package containing the seized firearm suppressor. HCPD had previously sent an undercover agent inside the business to engage in conversation with Darden. A USPIS agent, acting in an undercover capacity, knocked on the front door of the business and left the package in the front door handle. Agents observed Darden retrieve the package from the door handle and take the package inside the business. The HCPD undercover agent observed Darden open the package and state "Damn, I didn't think they would actually send this."

19.     On January 31, 2024, after the controlled delivery of the package, agents executed the aforementioned federal anticipatory search warrant. During the search of the business, agents discovered a cellular telephone, computers, various other electronic devices, seven rifles of various calibers, two 12-gauge shotguns, three pistols of various calibers, over 1,800 rounds of various caliber ammunition, another suspected firearm suppressor, three rifle magazines, a Kevlar body armor vest, and miscellaneous gun parts/accessories. Among the items discovered were the Subject Electronic Devices. The Subject Electronic Devices were lawfully seized from Joshua A. Darden on January 31, 2024, and the Subject Electronic Devices have remained in the custody of law enforcement since that date, but law enforcement has conducted no further inspection, search, or

9

analysis of the Subject Electronic Devices' contents. The Subject Electronic Devices are currently being held as evidence at the HSI Wilmington office, located at 721 Medical Center Drive, Suite 300, Wilmington, North Carolina 28401.

20.    The Subject Electronic Devices were located in the following locations. The black in color Apple iPhone (unknown serial number) and I-Series desktop computer (serial number: 751D-EE5B-F17A-412F-17) were located in the reception area of the business. The HP laptop computer (serial number: 5CG2104865) was located in the tattoo parlor area of the business. The HP Laptop (serial number: CND24415QF) and the Apple iPad (serial number: DLXW3152HP34) were located in the office area of the business.

21.    On January 31, 2024, agents conducted an interview of Darden. Darden was advised of his *Miranda* rights pursuant to ATF Form 3200.4, Advice of Rights and Waiver. Darden signed the form and agreed to speak to agents. The following was gleaned during the interview of Darden:

a) Darden initially stated that he was not in possession of any firearms. Darden was questioned about the presence of his fingerprints or DNA on any firearms which may be found during the search warrant. Darden initially said skin cells and hair could be present in the air and land on anything inside the business but then added "if there is, it's only because I either moved it in somebody's glove box or I had put it in a drawer" or because he told somebody "Take your stuff back, I can't be around this." Darden insisted he does not "own any guns."

b) Later in the interview, when agents told Darden multiple firearms had been located in the business, Darden stated that some of the firearms belonged to his father before he passed away and that he (Darden) took the guns and had them at a storage

10

unit. Darden further stated that he brought the firearms to the business when he lost the storage unit. Darden claimed two of the firearms also belonged to "Chris." Darden stated that he knew his dad had about ten guns and that "half of them don't have clips, one of them is broken, one of them doesn't have a bolt for it." Darden elaborated that his father passed away on November 11, 2019 and he's had possession of the guns since that time.

c) When asked about the suppressor that was delivered prior to the search warrant, Darden stated he had retrieved the package from the door upon delivery and "opened it up and saw that it was something I ordered." Darden told Agents that he ordered a "solvent trap for a fuel line," furthering explaining he had ordered a "wix in line fuel filter" for a Mercedes he owns. Darden stated he purchased the item off eBay for twenty dollars ($20) and it was listed as a fuel filter. When asked about the item being a silencer, Darden maintained it was a fuel filter/solvent trap. Darden said, "they say it's for cleaning" and "they show two-liter bottles on a rifle," referring to videos he saw about the item he purchased. Darden then stated, "I'm not illiterate, I know what a silencer is." Darden also told agents he had messaged the seller of the item and received a response informing Darden the item was not coming any longer and he would receive a refund. Darden told agents "I can show you the order". SA Walton then asked Darden if it was on his computer, and Darden replied "Yeah, I've got it on my phone too". Darden said, "I wish I never ordered that." Darden then added he was informed the person could no longer sell the items and had taken them off the site.

11

d) Darden admitted to being a convicted felon. Darden stated he received a felony conviction in Tennessee and had his three years of probation transferred to Horry County, SC. Darden was asked if he had been notified in Tennessee at the time of his conviction, that he could not possess firearms, for which he answered "yes".

e) When asked about an additional suppressor he had purchased, Darden stated he had ordered another "fuel filter" and it was hanging in a bag on the wall of the business.

22.     During the execution of the Federal anticipatory search warrant, HCPD Narcotics and Vice agents simultaneously executed a state search warrant for narcotics. During the execution of the state search warrant, 28 grams of fentanyl, 8 grams of methylenedioxymethamphetamine (MDMA) and 126 grams of marijuana were discovered inside a safe located within the office area of the business.

## SUBJECT DEVICES AND TECHNICAL TERMS

23.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Electronic Storage Device: Electronic storage devices include any device capable of electronic data storage which is defined as storage that requires electrical power to store and retrieve that data. Electronic storage devices include but are not limited to the following:

I.     Computers and computer storage devices including hard drives, diskettes, laser disks, multimedia cards, and others which may store the equivalent of thousands of pages of information.

II.    Wireless telephones and other mobile devices such as tablets including popular devices such as iPads, Galaxy Tablets, and others with capabilities

12

of storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.

24.     Your affiant is aware that individuals that possess firearms generally maintain the firearms and/or ammunition on their person, in their residence, in their vehicles, or in places that are readily accessible, and under their physical control, to include secure locations such as safes and locked containers.

25.     Your affiant has participated in numerous investigations either as the investigating agent or as an assisting agent involving counterfeit items shipped from China. In every investigation this affiant has been involved in, when the items have come from China, the orders were placed over the internet. This is due to many factors which include language barriers, time zone differences, and the fact that the internet is the most efficient way to advertise goods in a foreign country. Additionally, during a post-*Miranda* interview Darden admitted to agents that he had used the internet to order the suppressor and that he communicated with the seller on eBay which is an internet-based website.

26.     Based upon this affiant's training, experience, and discussions with other federal agents related to the investigation of international import related and NFA violations, this affiant knows that the primary method for manufacturers to distribute to international customers is through the use of various online marketplace platforms such as eBay or other similar websites. This fact requires customers to utilize digital devices such as mobile phones, computers/laptops, and tablets to connect with and purchase the illegal firearms.

13

27.     Your affiant has been involved in numerous investigations involving the use of computers and cell phones, to include child pornography investigations. Because of this affiant's experience investigating these crimes, I know that computers retain information for extended periods of time and that even if the user deletes information, it can still usually be recovered using forensic software. Your affiant also knows computers retain information like internet browsing history for significant periods of time; therefore, your affiant believes that there will be evidence related to the purchase of the firearm suppressor on a computer, cell phone, or other electronic device belonging to Darden such as the Subject Electronic Devices. This affiant believes that there are likely emails confirming Darden's order and payment to the shipper. Based on your affiant's training and experience, individuals purchasing firearms or firearm parts keep records of their purchases, which are likely to be in electronic form when the item is purchased over the internet.

28.     Based upon my training and experience, and information relayed to your affiant by agents and others involved in the forensic examination of computers and digital devices, I know that electronic storage devices such as computers and mobile phones are often used to purchase from the internet and store information in very much the same way paper, ledgers, files, and file cabinets are used to store information. I know that it is common today for individuals to utilize digital devices to conduct their legal and/or illegal business and to store information related thereto. I know based on my training and experience, that subjects who are engaged in this illegal activity commonly store information related to their activities on digital devices.

29.     Based upon this affiant's training, experience, and discussions with other federal agents related to the investigation of international import-related and National Firearms Act (NFA) violations, this affiant is aware that persons engaged in illegal firearm and ammunition trafficking activity maintain at their residences, places of business, storage lockers, in their vehicles and other

14

locations under their control, items constituting fruits, instrumentalities, and evidence of their criminal activities and associations. These items can include firearms (used to protect the stock of arms and profits), packaging materials, financial records, personal address/telephone books identifying co-conspirators, indications of control/ownership, and other items incorporated as a part of this affidavit (more particularly described in Attachment B).

30.     Based on your affiants training and experience, as well as discussions with other agents, your affiant knows that members of drug trafficking organizations (DTOs) commonly communicate with cellular telephones, to include text messaging and multi-media messaging. Your affiant also knows that members of DTOs commonly store phone numbers for their drug suppliers, co-conspirators, and customers in their cellular telephones. The numbers stored in the telephone and phone logs could have significance to ongoing narcotic investigations, as well as possible connections to potential targets in this case.

31.     Additionally, I know from my training and experience that drug dealing is a very mobile business, which makes it necessary for persons involved in the drug business to use electronic communication devices, such as cellular telephones so that they can conduct their drug business at virtually any time without unnecessary delay. Your affiant knows that these devices are capable of storing information, such as phone numbers and/or coded messages, which may lead to the identity of co-defendants, co-conspirators, and/or sources of supply. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and electronic messages from associates and photographs or videos of the primary user, associates, and co-conspirators. The data inside cellular telephones is evidence of drug trafficking, demonstrates true ownership and control of the

15

telephones, which are often registered to another person, and can be effectively used to corroborate the statements of witnesses.

32.    In addition, your affiant knows from their training and experience that drug traffickers often have photographs or videos in cellular phones, of themselves, their co-conspirators and property/assets purchased with drug proceeds. These photographs and videos often contain evidence of drug trafficking and evidence of the use of cash proceeds to make purchases of various assets, such as vehicles or jewelry. Further, these photographs and videos are useful to identify sources of supply, customers, associates, and co-conspirators of the primary user of the telephone as well as vehicles used or owned, places of operation or storage, and other evidence of drug trafficking activities.

33.    Because of the foregoing facts, to include Darden's own admission, I assert that there is probable cause to believe that the Subject Electronic Devices will contain evidence of Darden's involvement in the Subject Violations alleged above.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Electronic Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Electronic Devices because:

       1.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual

16

memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

17

information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

35.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

36.  *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V. CONCLUSION

37.  Based on the foregoing investigation, there is probable cause to believe that Darden has committed the Subject Violations, and that the evidence, fruits and instrumentalities of these offenses, as more fully described in Attachment B of this Affidavit, are located on the Subject Electronic Devices, as described in Attachment A. I respectfully request that this Court issue a search warrant for the Subject Electronic Devices, authorizing the seizure and search of the items described in Attachment B.

38.  Because this warrant seeks only permission to examine electronically stored information in the Subject Electronic Devices, now in the custody of law enforcement, the

18

execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Respectfully submitted,

JEFFREY J WALTON
Digitally signed by JEFFREY J WALTON
Date: 2024.03.29 10:46:05 -04'00'

Jeffrey J. Walton
Special Agent
Homeland Security Investigations

On this **1** day of **April** 2024, Jeffrey J. Walton, appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

ROBERT B. JONES, JR.
UNITED STATES MAGISTRATE JUDGE

19

**ATTACHMENT A**

**DESCRIPTION OF ITEMS TO BE SEARCHED**

This warrant authorizes the forensic examination and evaluation of the Subject Electronic Devices, as depicted below, which were seized from Joshua A. Darden on January 31, 2024, and are currently located at the HSI Wilmington office, at 721 Medical Center Drive, Suite 300, Wilmington, North Carolina 28401:

1) Apple iPhone, black in color, with no legible serial number or model number visible on the device:



1

2) I-Series Desktop Computer, serial number 751D-EE5B-F17A-412F-17:



3) HP Laptop Computer, silver in color, serial number 5CG2104865:



4) Apple iPad, model number A1671, serial number DLXW3152HP34:



5) HP Laptop, red in color, serial number: CND24415QF:



This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

5

## ATTACHMENT B

## ITEMS TO BE SEIZED

This warrant authorizes (i) the search of the property identified in Attachment A for only the following and (ii) the seizure of the items listed below only to the extent they constitute the following:

1. evidence of violations Title 18, United States Code, Section 545 (importation of merchandise into the United States contrary to law); Title 18, United States Code, Section 922(a)(l)(A) (unlawful receipt of any firearm in interstate or foreign commerce); Title 18, United States Code, Section 922(g)(l) (possession of a firearm as a convicted felon); Title 21, United States Code, Section 841 (possession with intent to distribute controlled substances); and Title 18, United States Code, Section 924(c) (possession of a firearm in furtherance of a drug trafficking crime); or

1. any item constituting contraband due to the Subject Violations, fruits of the Subject Violations, or other items possessed whose possession is illegal due to the Subject Violations; or

2. any property designed for use, intended for use, or used in committing any Subject Violations.

*[Remainder of Page Intentionally Left Blank]*

Subject to the foregoing, the items authorized to be seized include all records on the Subject Electronic Devices described in Attachment A that relate to violations of and information pertaining to the user of the Subject Electronic Devices, to include the following:

a. Lists of customers and related identifying information;

b. Records relating to the import, export, or international transportation of merchandise. To include, but not limited to customs forms, customs declarations, shipping manifests, receipts, and invoices;

c. Seizure notices from U.S. Customs and Border Protection;

d. Records relating to common carriers and shipments to include, but not limited to: USPS, FedEx, UPS, DHL, etc.;

e. Computer-aided design (CAD) software, 3D printer software, templates, diagrams, instruction manuals, pamphlets, and other design programs;

f. Records relating to the acquisition and distribution and repair of firearms, firearms parts, tools and/or equipment associated with the manufacture of machineguns, short-barreled rifles and/or other firearms, including but not limited to ATF Forms, books, receipts, invoices, notes, ledgers, and pay/owe sheets;

g. Types, amounts, and prices of firearms and illegal narcotics trafficked as well as dates, places, and amounts of specific transactions;

h. Any information related to sources of firearms or illegal narcotics (including but not limited to the names, addresses, phone numbers, or any other identifying information who may be supplying or transporting drugs);

i. All bank records, checks, credit card bills, account information, and other financial records;

j. Evidence and records relating to the accumulation of proceeds derived from illegal firearms trafficking and manufacturing;

k. Photos of firearms and/or illegal narcotics;

l. Text messages, emails, chat messages and other forms of communications regarding the purchase or distribution of firearms and/or illegal narcotics;

m. Web browser history, to include, but not limited to various online marketplace platforms such as eBay, Wish, Craigslist, Facebook Marketplace or other similar websites;

n. Rental or lease agreements for storage units, safety deposit boxes, other storage locations, keys, combinations, and/or access codes for them, whether such documents are stored in documentary or electronic form;

o. Indicia of occupancy, residency, and/or ownership of the items noted above and of the premises;

p. Information regarding third party cellular phone communications applications, such WhatsApp and Facebook Messenger;

q. Evidence of user attribution showing who used or owned the Subject Electronic Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

r. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form;

s. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

t. Evidence indicating the state of mind of any device user as it relates to the crime under investigation; and

u. Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

*[Remainder of Page Intentionally Left Blank]*